UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                       CASE NO.   8:15-cr-264-SDM-AAS
                                                    8:20-cv-1216-SDM-AAS

ROSETTA VALERIE CANNATA
_____

## ORDER

Rosetta Valerie Cannata moves under 28 U.S.C. § 2255 to vacate her convictions and sentence for conspiring to distribute and distributing controlled substances and for conspiring to smuggle an alien into the United States, for which she serves a sentence of 151 months.  Cannata claims she was unfairly prosecuted and convicted based on patient medical files that a confidential informant falsified with the government's knowing assistance.  (*See generally* Civ. Docs. 1, 2, and 15) Her claims are procedurally defaulted and lack merit.

## I.  BACKGROUND

In affirming the convictions and sentences of Cannata and her co-defendant Fred Joseph Turner, the circuit court summarized the facts of this case as follows, *United States v. Cannata*, 791 F. App'x 143, 145–46 (11th Cir. 2019):

> Turner and Cannata ran the Gulfshore Pain and Wellness Centre, a pain management clinic with offices in Tampa and Punta Gorda, Florida. Turner was the clinic's only licensed medical doctor. Cannata was formerly a doctor, but she no longer had her medical license. At Gulfshore she worked as the

business manager, handling the clinic's paperwork, licensing, expenses, and payroll.

In 2014 the United States Drug Enforcement Agency began investigating Gulfshore as a possible "pill mill." It sent undercover agents posing as patients to both of Gulfshore's offices. The agents discovered that Turner was prescribing large quantities of morphine, oxycodone, hydromorphone, and hydrocodone—in potentially dangerous combinations— without conducting physical exams. Turner also ignored red flags, writing prescriptions for people who admitted to past or present drug abuse and to sharing their pills with others. Cannata did not issue any prescriptions herself, but Turner often consulted with her during the agents' visits. Turner and Cannata also made comments suggesting that they knew their business was illicit: for example, Turner assured one undercover officer, who said he was looking for a "discreet" pain clinic, that Gulfshore tried to "fly under the radar," and Cannata told another agent that Turner watched the waiting room and parking lot "like a hawk" to make sure his patients were not abusing drugs too obviously.

The investigation reached its climax after Turner and Cannata asked one agent, who was posing as a charter fisherman, to help them smuggle Cannata's Hungarian former housekeeper into the United States from the Bahamas. The agent agreed to help in exchange for a cash payment and more drugs, and he made detailed plans with the defendants over the course of several weeks. As Turner and Cannata drove to meet the agent for their "departure" to the Bahamas, other agents pulled them over and arrested them.

A grand jury indicted Cannata and Turner on one count of conspiring to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, four counts of distributing a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, and one count of conspiring to bring an alien into the United States at a place not designated as a port of entry, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(1) and (a)(1)(B)(ii). Cannata and Turner took their case to trial. Mark E. Pena represented Cannata before and throughout

the trial.  David T. Weisbrod joined Mr. Pena as co-counsel for sentencing and appeal. Turner retained separate counsel.

After a nine-day jury trial, the defendants were found guilty of all charges. The district court sentenced both Cannata and Turner to 151 months.

In their joint appeal Cannata and Turner argued that the district court abused its discretion by refusing to grant a mistrial based on evidentiary issues.  Cannata challenged the sufficiency of the evidence to support some of her convictions and her sentence.  The circuit court rejected their challenges and affirmed.  *Cannata*, 791 F. App'x at 151.

Cannata moves to vacate her convictions and sentence and claims in Ground One that the government committed violations under *Brady v. Maryland*, 373 U.S. 83 (1963), and prosecutorial misconduct.  In Grounds Two through Four, Cannata claims counsel was ineffective during pretrial, trial, and sentencing proceedings.  In an addendum Cannata claims entitlement to relief under *Ruan v. United States*, 597 U.S.__, 142 S. Ct. 2370 (2022).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its

two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable

professional judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent

assistance."  466 U.S. at 690.

Cannata must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  466 U.S. at 691–92.  To meet this burden, Cannata must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Cannata cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); s*ee also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III.   GROUND ONE

Cannata claims the government committed *Brady* violations by withholding evidence about the confidential informant ("CI") who assisted the Drug Enforcement Administration's ("DEA") investigation.  (Civ. Doc. 1 at 4–5; Civ. Doc. 2 at 11–18; Civ. Doc. 15 at 3–8)  She claims the government improperly withheld (Civ. Doc. 15 at 4):

> (a) the unredacted DEA briefings and debriefings of the CI; (b) the cooperation agreement between the DEA and the CI; and (c) the information on what kind of immunity they gave to the CI, what crime or crimes she committed and on what basis was her salary earned for her cooperation including her weekly, monthly or whether her salary was per job that she worked with the DEA.

According to Cannata, the improperly-withheld evidence proves that the CI, with the assistance of Task Force Officer Bruce Hernandez, falsified the patient records that the government relied upon to prosecute her. (Civ. Doc. 15 at 5–6)

To support her prosecutorial misconduct allegations, Cannata claims (1) Officer Hernandez "knowingly lied on a sworn affidavit to the [court] to [obtain] a search and seizure warrant," (2) the DEA directed the CI "to tamper medical records and laboratory reports to incriminate [the defendants], in exchange for immunity," and (3) the DEA knowingly used false evidence in the form of altered patient records to prosecute her.  (Civ. Doc. 2 at 15–16)

Cannata procedurally defaulted these allegations by failing to raise them on direct appeal.  "[A] 'procedural default' occurs when a defendant raises a new challenge to h[er] conviction or sentence in a § 2255 motion."  *Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th Cir. 2022) (citing *Lynn v. United States*, 365 F.3d

1225, 1234 (11th Cir. 2004)).  "'The procedural-default rule is . . . a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'"  *Foster v. United States*, 996 F.3d 1100, 1106 (11th Cir. 2021) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).  "Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."  *Lynn,* 365 F.3d at 1232.

"If a defendant fails to raise an issue on direct appeal, [s]he may not present the issue in a § 2255 proceeding unless h[er] procedural default is excused."  *Seabrooks*, 32 F.4th at 1384 (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)).  "To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence."  *Id*.

## A.    Cause and Prejudice

As cause to excuse her procedural default of her allegations in Grounds One, Cannata claims that trial counsel was ineffective for not suppressing the allegedly altered patient records.  (Civ. Doc. 15 at 6–8)  In response to this claim, trial counsel represents that Cannata, "a very well educated and well-spoken individual, decided against testifying and . . . lost an opportunity to explain to the jury exactly how and why the medical records . . . were false[.]"  (Civ. Doc. 11-1 at 9)  He challenged the records' authenticity with testimony from Cannata's brother that the records were incorrectly maintained but "the jury evidently disagreed" with that testimony.  (*Id*.)

As additional cause to excuse her procedural default, Cannata claims that "appellate counsel chose not to raise this ground on appeal even though [she] wanted

it to be raised." (Civ. Doc. 15 at 4)  Appellate counsel responds that he did not object to the records' authenticity because he "had no basis at that time upon which to make such an argument." (Civ. Doc. 11-2 at 4)

"A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002).  However, to excuse her procedural default, Cannata's "claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).  She must show that "the default was caused by h[er] attorney's ineffective assistance and actual prejudice resulted." *Reece v. United States*, 119 F.3d 1462, 1468 (11th Cir. 1997).

To prove deficient performance, "[a] petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).  Because of the "strong presumption in favor of competence," a petitioner seeking to prove ineffective assistance of counsel "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1314–15.  "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." *Nyhuis*, 211 F.3d at 1344.

To overcome the procedural default, in addition to showing counsel's deficient performance, Cannata must also show that she suffered actual prejudice from counsel's deficient performance. "'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Granda v. United States*, 990 F.3d 1272, 1288 (11th Cir. 2021) (quoting *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013). "The actual prejudice standard is 'more stringent than the plain error standard.'" *Id.* (quoting *Parks v. United States*, 832 F.3d 1244, 1245 (11th Cir. 1987)).  Appellate counsel's performance is prejudicial if "the neglected claim would have had a reasonable probability of success on appeal." *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009).

Cannata demonstrates neither cause nor prejudice to excuse her procedural default of her allegations that the government committed *Brady* violations and prosecutorial misconduct by withholding evidence about the CI and knowingly using false evidence to prosecute her. Two weeks before trial, counsel filed a joint[1] motion to supress all patient records and argued that the CI, working as an agent of the government, "tampered with patient files, urinalysis results, MRI results, and all other documents relevant to maintaining a proper and statutorily compliant medical practice[,]" which "led to the improper issuance of search warrants[.]"  (Crim. Doc.

---

[1] Cannata and Turner entered a joint defense agreement.  (Civ. Doc. 11-1 at 3)

99 at 2)  Counsel argued that the CI, whose employment performance was "unsatisfactory," altered the medical records seized by the government because she disliked the defendants.  (*Id*. at 7)  The government opposed the motion and argued that the allegation of record-tampering lacked evidentiary support and the motion "[was] not grounded in a constitutional right." (Crim. Doc. 111 at 7–8)

The district court conducted an evidentiary hearing on the motion to suppress.  (Crim. Doc. 116)  At the hearing counsel acknowledged his "mistake" in filing the motion to suppress on the eve of trial but asked "the court not to hold that [mistake] against [the defendants] and to allow [him] to go forward . . . , [and] plead [the defendants'] case from the evidence [he has.]"  (Crim. Doc. 267 at 6 and 8)  The district court described the motion as "untimely" but nevertheless permitted counsel to articulate the reasons for suppression of the patient records and to present evidence to support suppression.  (*Id*. at 7–9)

Counsel alleged that the CI and Officer Hernandez "intentionally went into the records and changed them."  (*Id*. at 11)  However, after the district court repeatedly asked counsel to proffer testimony to support this allegation, counsel eventually confirmed that he could present "no direct evidence that [Officer] Hernandez procured the cooperating witness's alteration of the documents."  (*Id*. at 18)  Counsel also confirmed that he could present no testimony that Officer Hernandez engaged in any misconduct.  (*Id*. at 13)  The district court denied the motion as both untimely and meritless and reasoned that the defense could "offer no

evidence that any altered document was altered by or is an alteration procured by an agent of the United States." (*Id.* at 27)

After unsuccessfully moving to suppress allegedly altered patient records, counsel challenged the records' authenticity at trial.  During opening statements, counsel for Turner explained that "[i]t's not clear what criteria that [the CI] would have used to select these files" and that "out of roughly 1200 or so patient files that were seized by the Drug Enforcement Administration, they relied upon 16 of those files." (Crim. Doc. 251 at 46)  Counsel for Cannata emphasized in his opening statement that the CI was a twice-fired "disgruntled employee," who "sabotage[ed] the patient files" and gave them to the government without patients' permission.  (*Id.* at 50–51)

Counsel elicited testimony about the records to further challenge their authenticity.  The government's expert witness, Mark A. Rubenstein, M.D., acknowledged on cross examination that, if the records on which he relied to form his opinion had been altered, his opinion "possibly" could be incorrect.  (Crim. Doc. 255 at 115–16)  On direct examination, Cannata's brother, who worked as the "supervisor of records . . . in charge of HIPAA office compliance," testified about the inaccuracies in the patient files, suggesting that "[s]omebody whited out the doctor's name and time stamp." (Crim. Doc. 256 at 88 and 136)

The record shows trial counsel both moved to suppress the allegedly altered patient records and challenged the records' authenticity at trial.  Despite his efforts, however, counsel failed to persuade the jury of Cannata's innocence.  "The mere fact

that counsel was unsuccessful in making certain arguments, does not, without more, direct a finding that counsel's performance was constitutionally deficient." *United States v. Walker*, No. 3:08-cr-87, 2015 WL 4389939, at *8 (N.D. Fla. July 15, 2015); *see also Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel").

Similarly, appellate counsel was not ineffective for not raising meritless claims of *Brady* violations and prosecutorial misconduct. *See Geter v. United States*, 534 F. App'x 831, 837 (11th Cir. 2013) ("Appellate counsel's failure to raise a non-meritorious claim in [defendant's] direct appeal, despite the fact that trial counsel had raised the claim at sentencing, does not constitute deficient performance under *Strickland*."); *DiPietro v. United States*, 251 F. App'x 606, 609 (11th Cir. 2007) (affirming that the defendant was not prejudiced by appellate counsel's failure to raise claims of *Brady* violations and prosecutorial misconduct because the defendant did not show "a reasonable probability the [suppressed evidence] would have affected the outcome of the trial").

### B.   Actual Innocence

Because Cannata fails to show that counsel's alleged ineffectiveness constitutes cause and prejudice to excuse her procedural default of her claims in Ground One, her procedural default can be excused only if she demonstrates her actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency. *Id*. To show actual innocence of the offense of conviction, a movant "must show that it is

more likely than not that no reasonable juror would have found h[er] guilty beyond a reasonable doubt" in light of the new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person of the crime." *Sawyer v. Whitely*, 505 U.S. 333, 349 (1992).

Cannata maintains her factual innocence and insists the DEA and the CI "worked together to get [her] convicted of crimes she did not commit." (Civ. Doc. 2 at 42)  However, she presents no new evidence of her innocence to undermine the evidence of her guilt presented at trial such that "it is more likely than not that no reasonable juror would have found her guilty." *Schlup*, 513 U.S. at 327.  Indeed, the circuit court found "[t]here was more than enough evidence for a reasonable jury to have found Cannata guilty." *Cannata*, 791 F. App'x at 151 (rejecting Cannata's challenge to the sufficiency of the evidence supporting her convictions in counts one through four).[2]  Consequently, Cannata fails to show that her actual innocence excuses her procedural default of her allegations in Ground One.[3]

---

[2] The circuit court reasoned, *Cannata*, 791 F. App'x at 150–51:

> That Cannata was present in the exam room when Turner was prescribing drugs was enough evidence for the jury to find her guilty of conspiracy. The operation had all the hallmarks of a pill mill. . . . A reasonable jury could have concluded that Cannata, a trained and experienced doctor, would have recognized the hallmarks of a pill mill. A reasonable jury could have inferred Cannata would not have worked with Turner unless she had agreed to help him illegally distribute drugs, and also that he would not have allowed her to be present when he illegally distributed drugs unless she had agreed to help him.

[3] In addition to being procedurally defaulted, the allegations in Ground One lack merit for the reasons set forth in section III.A.

## IV.   GROUND TWO

Cannata claims counsel was ineffective during pretrial proceedings because he (1) failed to advise her about the benefits of a guilty plea and consequences of a trial, (2) failed to file substantive pretrial motions, (3) failed to conduct adequate pretrial investigation, and (4) failed to negotiate a plea agreement. (Civ. Doc. 1 at 5–6; Civ. Doc. 2 at 18–31; Civ. Doc. 15 at 8–9)

### *Failure to Advise about Plea Negotiations and to Negotiate a Plea Agreement*

Cannata claims that counsel never advised her of the benefits of a guilty plea and the consequences of a trial.  She acknowledges that "she was offered a plea deal of 10 years" but she rejected the offer because it "was really no deal."  (Civ. Doc. 2 at 19)  She claims counsel never told her she could continue negotiations with the government and neglected to communicate the government's final offer of a five-year sentence.  (*Id*. at 30)

Counsel refutes Cannata's claim.  (Civ. Doc. 11-1 at 6–8)  He represents that, although Cannata was experienced in criminal plea negotiations because of her prior state conviction, he "thoroughly discussed and advised" her about the federal plea negotiation process.  He met with the prosecutor to discuss a possible guilty plea, diligently negotiated for a more favorable plea agreement, and relayed all offers to Cannata.  According to counsel, Cannata rejected the government's offers because she refused to admit wrongdoing and did not want to serve time in prison.

"Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the

prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).  In the

context of plea negotiations "a defendant must show the outcome of the plea process

would have been different with competent advice."  *Lafler v. Cooper*, 566 U.S. 156,

163 (2012).  To show prejudice,

> a defendant must show a reasonable probability that but for
> counsel's ineffectiveness: (1) the plea offer would have been
> presented to the court (*i.e.*, that the defendant would have
> accepted the plea and the prosecution would not have
> withdrawn it in light of intervening circumstances); (2) the
> court would have accepted its terms; and (3) the conviction or
> sentence, or both, under the offer's terms would have been less
> severe than under the judgment and sentence that in fact were
> imposed.

*Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quotations omitted).

Accepting as true that counsel failed both to advise Cannata about plea

negotiations and to relay the government's final offer of a five-year sentence, this

claim nevertheless fails because Cannata cannot demonstrate she was prejudiced by

counsel's performance.  Two status reports filed by the government show that

Cannata was offered but rejected a plea agreement.  (Crim. Doc. 86 at 2; Crim. Doc.

91 at 2)  And, in this action, Cannata continues to maintain her innocence and insists

that "the DEA, the CI, [and] the government all worked together to [convict her] of

crimes she did not commit" using "fabricated evidence."  (Civ. Doc. 2 at 42)

Therefore, she cannot demonstrate a reasonable probability that but for counsel's

ineffectiveness she would have accepted a plea agreement offered by the government.

*Cook v. United States*, 613 F. App'x 860, 864–65 (11th Cir. 2015) (affirming that the

defendant could not show prejudice because he "rejected the government's terms

from the time they were first proposed to him" and "refused to accept more than limited responsibility" for the charged offenses).

### *Failure to File Pretrial Motions and to Conduct Adequate Pretrial Investigation*

Cannata erroneously claims that counsel neglected to file substantive pretrial motions.  She claims counsel should have filed (1) a motion for discovery to obtain information about the CI,[4] (2) a motion under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the affidavit supporting the search warrant, and (3) a motion in limine to exclude the allegedly altered patient records.  Cannata vaguely claims that counsel conducted no pretrial investigation and failed to learn the facts of the case and the applicable law.  (Civ. Doc. 2 at 21–28)

The record shows that counsel filed pretrial motions including motions for continuance (Crim. Docs. 30, 35, 37, 39, 41, 84, 87, and 88), motions to travel (Crim. Doc. 58, 74, and 76), a *Daubert* motion to exclude or limit the testimony of government expert Dr. Rubenstein (Crim. Doc. 93), a motion for disclosure of confidential informants (Crim. Doc. 98), a motion to suppress allegedly altered patient records (Crim. Doc. 99), and a motion to exclude evidence of Cannata's prior guilty plea (Crim. Doc. 126).  Also, the record shows counsel sought continuances to

---

[4] Cannata claims a motion for discovery should have been filed to obtain (1) the contract between the CI and the DEA, (2) the contact information for all undercover agents involved in the case, (3) unredacted briefings of the CI and the DEA, (4) the substance of any proffer offered by the government to the CI, (5) all contracts between the CI and the government, (6) the criminal records of the CI and any government witnesses, (7) the information proffered by the government to obtain the search warrant of her home and the Gulfshore clinic, (8) the substance of all conversations between the prosecutor, the DEA, the CI, and the government witnesses, (9) information provided to the grand jury, (10) all information under the Jencks Act, (11) all text messages between the prosecutor, the DEA, the CI, and the government witnesses, (12) all exculpatory evidence, and (13) all offers made to the CI in exchange for her cooperation.  (Civ. Doc. 2 at 23–24)

review the discovery materials provided by the government, to further investigate, and to effectively prepare for trial. (Crim. Docs. 30, 39, 40, 44, 45, 54, 55, 68–70, and 84)  Counsel requested a continuance to review 300 patient files that contain "data imperative as to the sole issue involved in this prosecution, specifically whether the Defendants violated the standard of medical protocol for administration of pain reducing narcotics."  (Crim. Doc. 54 at 1)

Cannata's complaints about counsel's pretrial preparation are refuted by the record and amount to her dissatisfaction with counsel's strategic decisions in filing pretrial motions and developing theories of defense.  "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314; *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001) (recognizing that "there is no absolute duty to investigate particular facts or a certain line of defense").  Cannata's vague and self-serving assertions that counsel conducted no pretrial investigation and failed to learn the facts of the case and the applicable law are insufficient to demonstrate deficient performance or prejudice.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a defendant is not entitled to an evidentiary hearing "when h[er] claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (citations omitted); *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining that a defendant must allege "reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

# V.   GROUND THREE

Cannata claims counsel was ineffective during trial because he failed to (1) inform her of his trial strategy, (2) effectively cross examine the government's witnesses, and (3) argue prosecutorial misconduct.  (Civ. Doc. 1 at 6–7; Civ. Doc. 2 at 31–41)

### *Failure to Develop a Trial Strategy*

Cannata claims counsel failed to develop a trial strategy or legal defense.  (Civ. Doc. 2 at 40–41)  She continues to press her unsupported position that "there was sufficient proof of the numerous times the evidence [was] falsified" but counsel "took no action."  (*Id.* at 41)  She alleges that counsel's failure "was not the product of an oversight" but "a deliberate tact designed to allow the officers to craft a story which better suited their needs and painted [her] and Dr. Turner as villains."  (*Id.*)

Cannata claims that counsel was ineffective for not challenging the search warrant, which she claims "was based on lies and fabricated medical records accomplished by the CI."  (*Id.* at 32–33)  She alleges that Officer Hernandez improperly seized records and materials beyond the scope of the warrant, including records dated as early as 2000 and the corporate server for Turner Orthopedic.  She claims that the government obtained the illegal search warrant "with malicious intent" to inhibit Turner's access to money he needed for his defense.  (*Id.* at 33)  Also, she claims that Officer Hernandez violated federal privacy laws by accessing patients' records in the Prescription Drug Monitoring Program without their consent.

Cannata claims counsel should have obtained the MRI films of Turner's patients from Bowes Imaging because those films constituted "tangible evidence of spinal abnormalities qualifying each patient for treatment, for surgery or pain management." (*Id.* at 35–36)  According to Cannata, counsel neglected to obtain the MRI films due to laziness and gross negligence.

Cannata claims counsel neglected to cross examine the government's expert, Dr. Rubenstein.  (Civ. Doc. 2 at 38–39; Civ. Doc. 15 at 6–8)  She vaguely claims that counsel neglected to investigate Dr. Rubenstein's background or "malpractice issues."

Cannata claims counsel failed to "request[] certain jury instructions to ensure the jury's proper understanding of the law as it related to the facts of this particular case."  (Civ. Doc. 2 at 41)  However, she neglects to identify the jury instructions counsel should have requested.

Counsel responds that he represented Cannata for over 25 months during which he met in-person with her approximately 25 times and exchanged "over a hundred pages of email."  (Civ. Doc. 11-1 at 4–5)  They "strateg[ized] [on] dozens of occasions" to develop her defense including that (1) her conduct did not amount to criminal culpability, (2) she did not diagnose patients or issue prescriptions, (3) she did not conspire to bring an alien into the United States because they entered through a "valid governmental entry point," (4) she did not obtain any "real monetary gain" from the scheme, (5) the government could not show long patient waiting lines at the clinic, and (6) not "a single one of the patients who testified or

otherwise were patients" at the clinic died or filed a complaint against the clinic.  (*Id.* at 6)  Counsel explains that he challenged the records' authenticity by eliciting testimony from Cannata's brother that the records were incorrectly maintained.  (*Id.* at 9)

Cannata's complaints are refuted by the record.  The fact that counsel's trial strategy was unsuccessful does not amount to constitutionally ineffective assistance.

### *Failure to Retain Expert Witnesses*

Cannata claims that counsel was ineffective for not engaging Carol A. Warfield, M.D., as an expert in pain management, and Howard Heil, M.D., as an expert addictionologist. (Civ. Doc. 2 at 34)  She vaguely claims that these witnesses "could have explained the correct procedure of Dr. Turner's practice."  (*Id.*)

Counsel represents that he advised Cannata "to secure credibly, experienced expert witnesses in the areas of computer science and medical pain management medicine." (Civ. Doc. 11-1 at 9)  According to counsel, however, Cannata chose not to retain a medical expert witness because she believed the expert's testimony would be based on altered patient files and therefore faulty.

Counsel's failure to call a witness the defendant thinks would be helpful does not constitute ineffective assistance of counsel.  *Hardwick v. Crosby*, 320 F.3d 1127, 1161 (11th Cir. 2003).  "Which witnesses to call, and when to call them, is the epitome of a strategic decision."  *Conklin v. Schofield*, 366 F.3d 1191, 1201 (11th Cir. 2004).  To demonstrate counsel was ineffective for not calling an expert witness, a defendant must show this failure was "so patently unreasonable a strategic decision

that no competent attorney would have chosen this strategy." *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001).

Accepting as true that counsel, alone and against Cannata's wishes, decided not to retain Drs. Warfield or Heil as medical experts, this claim fails. Cannata neither describes the testimony these witnesses would have offered nor explains how their testimony would undermine confidence in her convictions. Cannata neglects to show that no competent attorney would have chosen not to retain these medical expert witnesses.

### Failure to Call Fact Witnesses

Cannata claims that counsel was ineffective for not calling particular fact witnesses to testify. First, she claims counsel should have called to testify a representative from Soapware, the electronic medical records software provider for the Gulfshore clinic. (Civ. Doc. 2 at 34–35) She claims that a Soapware representative would have explained to the jury how the CI altered the patient files but counsel "never had an understanding of the software."

Cannata claims counsel should have called Megan (last name unspecified) from Millennium Labs to testify that no one other than the CI could have altered the patient records. (*Id.* at 35) She vaguely claims that counsel's refusal to call this witness seriously and negatively affected her defense.

Cannata claims counsel should have called to testify Florida Department of Health nurse June (last name unspecified) and City of Tampa Detective Detrio. (*Id.* at 36–37) She explains that, since 2010, nurse June and Detective Detrio inspected

and approved the re-licensing of the Gulfshore clinic.  She claims the testimony of these two witnesses would have cast doubt on the testimony of Florida Department of Health inspector Tim Smith, who identified egregious violations and patterns of abuse at the clinic.

Cannata claims counsel should have called to testify Pat Buss, who worked at the Gulfshore clinic for 30 years and "knew the whole practice better than anyone else."  (*Id*. at 37)  According to Cannata, counsel "refused for reasons only he understands."

Cannata claims counsel should have called to testify T. J. McNichol, M.D., who was the physician operating the clinic before Dr. Turner.  (*Id*. at 38)  She alleges that Dr. McNichol, although not prosecuted, prescribed more pain medication than Dr. Turner prescribed.  She vaguely claims this proves "the DEA had another agenda."

Cannata fails to overcome the presumption that counsel's decisions not to call these particular fact witnesses were anything other than trial strategy.  And, the record shows that counsel elicited testimony on cross examination from inspector Smith that Cannata did not prescribe any medication and had no obligation to conduct any medical examination.  (Crim. Doc. 254 at 39)  Cannata cannot show that "no competent counsel would have taken the action that counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted).

### *Failure to Call the Confidential Informant to Testify*

Cannata claims counsel should have called the CI to testify, and she lists questions counsel should have asked to show that the CI altered patient records. (Civ. Doc. 2 at 39–40) She accuses the CI of destroying evidence, committing insurance fraud, and endangering patients.  She repeats her allegation that the DEA improperly concealed material information about the CI's "role in the instant offense."

Counsel explains the reasons he chose not to call the CI to testify (Civ. Doc. 11-1 at 12–13:

> The witness had many prior impeachable offenses and acts that would have discredited her to the jury. The problem is that, . . . since it's the government's burden of proving the charges beyond a reasonable doubt, then the defense should not call to the stand a witness that will accuse the defendant of committing the crime. If no witness accuses the defendant, then the defendant prevails. While the impeachment of the UC/CI would have been substantively devasting [sic], all that could serve to do is take away any points the government would gain from the witness pointing to the accused. If that witness never points the accusing finger, why call her at all and give the government another accusing witness. This matter is one of debate, but my advocacy against calling the UC/CI was not ineffective, but strategic. The bottom line is that that witness never accused my client of wrong-doing in front of the jury, and that is my job.

Counsel's strategic choice not to call the CI to testify because the CI both lacked credibility and would accuse Cannata of committing the charged crimes is "virtually unchallengeable."  *Strickland*, 466 U.S. at 690–91.  Cannata cannot show that counsel's decision not to subpoena an adverse witness with a criminal history was "so patently unreasonable that no competent attorney would have chosen [not to

subpoena the witness]." *Dingle v. Sec'y, Dep't of Corrs.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.").

## VI.   GROUND FOUR

Cannata claims counsel was ineffective at sentencing because he failed both to review the presentence report with her and to object substantively to the report. (Civ. Doc. 1 at 8–9; Civ. Doc. 2 at 41–42) She vaguely claims that counsel's performance at sentencing was deficient and the district court would have imposed a shorter sentence had counsel prepared adequately.

The record refutes this vague claim. In a sentencing memorandum counsel objected to the facts and guidelines calculations in the presentence report and requested a downward variance from the advisory guidelines range. (Crim. Doc. 219) Counsel repeated his objections in an addendum to the final presentence report. (Crim. Doc. 232 at 28–39).

At sentencing Cannata confirmed she had reviewed the presentence report and discussed it with counsel. (Crim. Doc. 260 at 6) Counsel called three witnesses to testify on behalf of Cannata. (*Id*. at 47–67) Cannata herself spoke to the district court to explain her personal and medical history and to express her fear that a prison term would delay treatment for her medical condition. (*Id*. at 68–72)

Citing the seriousness of the offense and Cannata's lack of remorse, the district court declined to vary downward and imposed a sentence of 151 months at the low-end of the guidelines range (*Id*. at 88–92):

> One, I think the seriousness of this offense is self-evident. A review of the evidence in the case makes the seriousness of the offense graphic and poignant.
>
> The duration of this offense and the effort directed toward the offenses of conviction . . . the rather remarkable brazenness of the whole thing, again, was apparent from the evidence. . . .
>
> [A] lack of remorse, a lack of recognition, almost a determined denial.  [The defendants] are entitled to maintain their innocence, but it's startling, given the content and the nature of the evidence. And . . . particularly some of the witnesses were quite memorable and quite vivid, quite credible, compelling, and revealing of the nature of the activity that has resulted in the offenses of conviction. . . .
>
> Count Six [for conspiring to unlawfully bring an alien to the United States] remains a bit mysterious to me, but it was certainly calculated, certainly intentional and purposeful. It was aggressive and, again, unacknowledged and apparently unlamented. But an unusual set of circumstances, which remains without explanation and without apology. . . . [T]he offenses are I think quite clear and quite striking and quite compelling.
>
> The individuals, Mr. Turner and Ms. Cannata, have both been spoken on behalf of by persons with a good deal of knowledge of their lives. Ms. Cannata's spoken for in earnest by her brother and by her husband and others. . . .
>
> [I]t frequently happens, especially in what we might call . . . the white-collar offenses that people who have . . . committed some federal crime have people come in and swear to, I think credibly, that the balance of their life is . . . admitted no suggestion of the possibility even that they would have done what the evidence in the case, which the witnesses often have not heard, could have occurred.
>
> And it's a persistent conundrum in these cases about how people who behave one way in one part of their life, perhaps the majority of their life, perhaps in almost all of their life,

during almost all of their life, nonetheless commit some felony, even some atrocity or series of atrocities in another part of their life. But there it is. It happens. It happens repeatedly and family members and friends are often startled by it. But there it is. . . .

[T]he defendant has, I have no reason not to believe, spent a good part of her life doing some things that were good, but she's spent a fair amount of it doing some things that aren't, including the offenses of conviction, which she certainly committed.

Counsel reminded the Court yesterday, quite properly, that—to the extent that there's any excitement in the community, the larger or smaller community, about opioids—that shouldn't leak insidiously into an individual defendant's sentence. And I understand and accept that concept from counsel for the defense.

Nonetheless, sentences do have public purposes, to assist in deterring those who would contemplate similar conduct, to inform those who would contemplate the conduct of the range of consequences that are available and, therefore, to cause them to reason their way, if that's the process they're engaged in, into conforming to the laws rather than violating them; to protect the community, both from the particular defendant involved and from similar conduct by others; to enhance respect for the law, both in particular laws involved and in respect for conformity to the law in general; and to avoid unwarranted disparity.

So I did not find the very generic drug statistics that counsel cited to be particularly persuasive for the reasons that I cited earlier, among others. It's a much too encompassing statistic and the cohort of defendants involved there includes many people not really comparable at all to this defendant. I think that the announced sentence is within the mainstream of sentences that account for the other applicable considerations.

Cannata's vague and self-serving assertion that the district court would have imposed a shorter sentence had counsel prepared adequately is insufficient to demonstrate deficient performance or prejudice.  Counsel's unsuccessful objections to the presentence report and unsuccessful request for a downward variance do not constitute deficient performance.  And, Cannata cannot show a reasonable

probability that she would have received a shorter sentence but for counsel's alleged ineffectiveness in light of the district court's reasoning supporting the low-end sentence. *See Presendieu v. United States*, No. 21-12552, 2022 WL 4115147, at *5 (11th Cir. Sept. 9, 2022) (reasoning that the defendant could not show counsel's performance at sentencing prejudiced him when the district court concluded the defendant was not credible and "nothing else in the record suggest[ed] that [the defendant] would have fared better" but for counsel's performance).

## VII.   ADDENDUM

Cannata files an addendum (Civ. Doc. 17) to her Section 2255 motion in which she claims entitlement to relief under *Ruan v. United States*, 597 U.S. __, 142 S.Ct. 2370, 2375 (2022), which holds that "[a]fter a [doctor] defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so."  Cannata's proposed *Ruan* claim is untimely because the claim does not "relate back" to her original Section 2255 motion.  *See Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003) ("[N]ew claims alleging different trial errors [are] not part of the same course of conduct, and as such, [do] not relate back to the date of the [defendant's] timely filed § 2255 motion.").  Also, Cannata has not demonstrated that *Ruan* applies retroactively.  *See In re Blanc*, No. 22-12527-F, 2022 U.S. App. LEXIS 24640, at *4 (11th Cir. Aug. 31, 2022) ("*Ruan* did not announce a new rule of constitutional law

but, rather, clarified the *mens rea* that the government must prove to convict a defendant under § 841.").

Alternatively, *Ruan* affords Cannata no relief because she was not a licensed physician. *See Williams v. United States*, No. 22-55, 2022 WL 16936253, at *3 (E.D.N.C. Nov. 14, 2022) ("[*Ruan*] did not introduce a new scienter standard for all prosecutions under 21 U.S.C. § 841.  Instead, the change in scienter requirement applies only to 'the state of mind that the Government must prove to convict' a doctor of violating 21 U.S.C. § 841[.]") (denying motion to amend Section 2255 petition to add a claim under *Ruan*).

Cannata's motion under Section 2255 to vacate, set aside, or correct her conviction and sentence (Civ. Doc. 1) is **DENIED**.  The clerk is directed to enter a judgment against Cannata, close this case, and enter a copy of this order in the criminal case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Cannata is not entitled to a certificate of appealability ("COA").  A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Cannata must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues

she seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Cannata is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Cannata must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 5th, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE